LittletoN, Judge,
delivered the opinion of the court:
The defendant demurs to the second amended petition filed herein on the ground that the facts set forth therein do not state a cause of action against the United States entitling plaintiffs to recover.
The essential facts alleged and set forth in the petition, so far as are necessary to a determination of the question raised by the demurrer, are that plaintiff, the Poinsett Company, is the owner of a tract of timberland situated in Cross County, Arkansas, comprising more than 21,000 acres of the value of $1,366,845, which, it is alleged, has been appropriated and taken by the defendant under and by virtue of the following acts and circumstances:
1. The enactment of the act of June 15,1936,49 Stat. 1508, and subsequent legislation providing for the construction of certain levees along the St. Francis River and along the right-hand chute of Little River, a tributary thereof, in the states of Missouri and Arkansas, and the appropriation of money for that purpose; the making of extended surveys by the defendant of its lines for constructing such levees.
2. The acceptance by defendant of assurances furnished by numerous local improvement districts, with the exception of Drainage District No. 6 within which plaintiffs’ property is situated. The entry upon the land by Government surveying parties at divers times for the purpose of fixing and establishing a line upon which or along which levees wifi, be constructed by defendant as a part of and in. accordance with a plan of levee construction.
*266 3. The construction by the defendant of levees at Big Lake, sixty miles to the north of plaintiffs’ land; along the right-hand chute of Little Biver, thirty miles to the north of plaintiffs’ property; and the partial construction of Wappapello Dam in the State of Missouri, one hundred miles to the north of the land in controversy.
4. The contemplated or planned construction of levees on both sides of the St. Francis Biver from Wappapello Dam to the northern terminus of Sand Slough and thence along the lines of levees previously constructed by local interests on either side of Sand Slough to plaintiffs’ property; that where said Wappapello Dam and levees are constructed and connected in a complete system, the water from the river “will be forced over said lands of Poinsett Company, resulting in their entire destruction, including the standing timber thereon, and render them of no value.”
From the primary and essential facts alleged in the petition, as distinguished' from conclusions, we are of opinion that none of the essential elements necessary to constitute a taking is shown by the facts alleged. Nothing that has been done by the defendant’s engineers since the passage of the act of June 15, 1986, has directly caused the diversion of water from the St. Francis Biver to flow over or be impounded upon any of the property in question. Plaintiffs have not been ousted or dispossessed of any of their property as the result of construction by the defendant of any levees, nor has the defendant at any time encroached upon their property, either by construction of levees thereon or by causing headwaters or backwaters to flow over or be impounded thereon. The construction work by the defendant has not had the effect of interfering with plaintiffs’ use or occupation of their lands.
In order to constitute a taking, such as will entitle an ■owner to maintain a suit against the Government for compensation, it must definitely appear that there has been an actual physical invasion or encroachment upon private property by the government, or else such' a direct physical destruction or deprivation of. use as to permanently dispossess the owner and oust him of the beneficial use and enjoyment thereof. The facts alleged fail to show that this has occurred. *267 The facts alleged show no more than that plaintiffs anticipate that, if the contemplated project is completed, their lands and the beneficial use thereof will be destroyed by flowage of water thereon, but the mere adoption of the plan is not the equivalent of a taking. The acts of the Government must constitute an actual invasion and dispossession of the use and occupancy of the property by the owners.
In United States v. Sponenbarger et al., 308 U. S. 256, the court held that a plan or program is not tantamount to and does not constitute a taking; and at page 267, the court said:
Even though the Government has not interfered with respondent’s possession and as yet has caused no flooding of her land, respondent claims her property was taken when the 1928 Act went into effect and work began on its ten-year program because the Act itself involves an imposition of a servitude for the purpose of intentional future flooding of the proposed Boeuf flood-way. But, assuming for purposes of argument that it might be shown that such supposed future flooding would inflict damages greater than all benefits received by respondent, still this contention amounts to no more than the claim that respondent’s land was taken when the statutory plan gave rise to an apprehension of future flooding. This apprehended flooding might never occur for many reasons — one of which is that the Boeuf floodway might never be begun or completed. As previously pointed out, the Act directed comprehensive surveys before utilization of any means of flood control other than levees and revetments. In general language it adopted a program recommended by the Chief of Army Engineers, but Congress did not sweep into the statute every suggestion contained in that recommendation.
Since it envisaged a vast program, the Act naturally left much to the discretion of its administrators and future decisions of Congress. Recognizing the value of experience in flood control, Congress and the sponsors of the Act did not intend it to foreclose the possibility of changing the program’s details as trial and error might demand.
In Danforth v. United States, 308 U. S. 271, 286, 287, the court said:
This leaves for consideration the contention that there was a taking by the enactment of the legislation, when work- began on the set-back levee or when that *268 levee was completed. The mere enactment of legislation which authorizes condemnation of property cannot be a taking. Such legislation may be repealed or modified, or appropriations may fail.
For completion of the set-back levee to amount to a taking, it must result in an appropriation of the property to the uses of the Government. This levee is substantially complete. The Government has condemned the land upon which the set-back is built. The tract now in litigation lies between the set-back and riverbank levees. The Government could become liable for a taking, in whole or in part, even without direct appropriation, by such construction as would put upon this land a burden, actually experienced, of caring for floods greater than it bore prior to the construction. The river-bank levee at the fuse plug has not been lowered from its previous height. Consequently the land is as well protected from destructive floods as formerly. We cannot conclude that the retention of water from unusual floods for a somewhat longer period or its increase in depth or destructiveness by reason of the set-back levee, has the effect of taking. We agree with the Court of Appeals that this is “an incidental consequence” of the building of the set-back levee.
In view of the facts alleged, and upon the authority of the cases cited, the demurrer must be sustained and the petition is therefore dismissed. It is so ordered.
Green, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.