GReen, Judge,
delivered the opinion of the court:
Plaintiff is a corporation, and in its petition alleges that it is the owner of certain tracts of land, described at length therein, embracing 4,663.52 acres located adjacent or near the Mississippi Eiver, and that at the time of the acquisition of this real property the same was defended and protected against flood or water submergence by public levees along the banks of the Mississippi Eiver upon said property whereby the property was arable and of value and subject to drainage of rainfall; that, notwithstanding said conditions so existing, the defendant by its authorized agencies, on or about July 13, 1931, and thereafter, and *663 acting within the scope and under authority of the Flood Control Act did select and locate a set-back or new levee line as part of a certain procedure adopted by defendant and known as the Jadwin Plan, of Flood control of the Mississippi River; that the new levee, known as the West Point New Levee, was and is located between stations .‘534+40 and 714+.28.6, .and .lies on the west side of the Mississippi and adjoins and contacts other previously existing levees, and is intended to, does and will withdraw levee protection to the real property of plaintiff and cause the Mississippi River permanently to overflow and destroy same; that the new levee site was and is duly approved by the authorized authorities of the State of Louisiana, and was constructed by the defendant and its agencies under certain contracts made pursuant to the Flood Control Act and Jadwin Plan, by which work was begun on or about September 1, 1931, and whereby the new levee was tied into the previously existing levees in or about the months of July or October 1934, and drainage outlets previously existing were stopped and made ineffective; that by the West Point New Levee defendant has materially lessened and shortened the west bank levee line on the Mississippi River and has thereby taken from plaintiff and placed on the river side all lands and improvements of plaintiff lying east of the West Point New Levee, within the intendment and meaning of the Fifth Amendment to the Constitution and the Flood Control Act.
Plaintiff states, by the West Point New Levee constructed and tied to existing levees at both ends, defendant has segregated and excluded all land and improvements of plaintiff from levee protection and from drainage, whereby the land and improvements, through lack of drainage, will be inundated by the natural rainfall, which averages sixty inches annually, and converted into a bog or marsh unfit for cultivation or other use, and whereby, in event of abandonment or removal of the previous levees around the property, which abandonment or removal plaintiff alleges and charges defendant purposes to accomplish and obtain, the river waters will be induced to break through upon the lands of plaintiff in the establishment of a new channel thereon, thereby putting the lands permanently in the bed of the *664 river, or establishing constant flowage rights thereon, and by the acts of the defendant, the lands of plaintiff will be made unfit and entirely destroyed.
The plaintiff further states that by the adoption of the Jadwin Plan of Flood Control and the enactment of the Flood Control Act, as amended, the defendant has assumed full responsibility for the control of the flood waters of the Mississippi River and its tributaries; that by its acts aforesaid, the defendant has deprived and does deprive the plaintiff of levee protection on the west bank of the Mississippi River, and of drainage as previously existing and enjoyed •by the plaintiff, and has exposed the lands and improvements of the plaintiff to overflow of the waters and has caused the lands and improvements of the plaintiff to be and remain unprotected in the making of the new channel, and thereby to be made entirely without further value to plaintiff, and to be taken for public use, damaged and destroyed, without making compensation therefor to plaintiff.
Plaintiff further states that before the construction of the West Point New Levee, and on and after July 13, 1931, the land and property of plaintiff, with improvements, were worth not less than $159,002.25; but that since its construction is without saleable value and the use thereof for all practical purposes has been taken and destroyed, to the consequent loss or damage of plaintiff in the full value thereof, as above stated.
The defendant moves to dismiss the petition and the case has been submitted on defendant’s motion. The motion does not set out the grounds thereof, which are stated in the written argument in support of the motion.
It will be observed from the statements in the petition that the action is based upon an implied contract, alleged to exist, to pay compensation for the reasonable value of the real property of plaintiff claimed to have been taken or destroyed by defendant for the purposes of public use and in the execution of its flood control act.
The claim of the plaintiff is expressly stated in the petition as founded upon the Fifth Amendment to the Constitution and in connection with the act of Congress for the control of floods, also referred to in the petition.
*665 The motion of the defendant is equivalent to a demurrer on the ground that the petition does not state a cause of action, and will be so treated.
We have set out all the allegations of the petition that are necessary to be considered in ruling on the motion. It will he seen that there is no allegation of a past or consummated inundation or damage.
While the petition alleges that the value of plaintiff’s land has been destroyed this allegation is not based upon anything the Government has done but merely upon what it proposes to do and upon what plaintiff alleges will happen in the future. Everything alleged is prospective upon the “abandonment or removal of the previous levees around said property” which plaintiff charges defendant “purposes to accomplish and obtain.” There is no allegation that anything has been done so far that has actually injured or impaired plaintiff’s property or deprived plaintiff of its use in whole or in part.
We do not think that the mere fact that the value of the property is injured or affected by some act which the Government proposed to do in the future establishes a taking in a constitutional sense.
In Danforth v. United States, 308 U. S. 271, 285, the court said:
A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a “taking” in the constitutional sense.
This rule, we think, applies directly to the instant case.
In United States v. Sponenbarger, et al., 308 U. S. 256, the court held that a general plan of flood control such as that proposed in the Jadwin Plan does not require the Government, under the Fifth Amendment, to pay land owners for damages which might result from conjectural major floods.
The decision by this court in Bennington County Savings Bank v. United States, 91 C. Cls. 160, and the decision in the Sponenbarger case, supra, were rendered upon the facts which included some matters which do not so far appear in the case before us, but we think that the general trend of the *666 decisions in the two cases last cited is in line with the Danforth case, supra, and also the decisions hereinafter cited.
In Kirch v. United States, 91 C. Cls. 196, 202, it was held that “the flood-control act in itself furnishes no legal basis for the payment of consequential damages by reason of depression in the market value of property,” but consequential damage by reason of depression in the market value of property is just what plaintiff is trying to recover in this case.
In numerous cases we have had before us actions to recover for consequential damages by reason of the adoption of the so-called Jad win plan for control of the floods of the Mississippi River and in all of them where the damages were consequential and prospective in their nature a recovery has been denied.
In Matthews, Trustee, v. United States, 87 C. Cls. 662, 720, it is said :
Contemplated or prospective encroachments, the direct effect and consequences of which are problematical and conjectural, do not give rise to an enforceable obligation to compensate. Only consummated acts which actually deprive an owner of property or of valuable existing property rights, or acts so definite in character as to show a clear intention to take the property or property rights, or to place thereon such a permanent servitude not theretofore existing as will deprive the owner of the actual or profitable use thereof, can be held the basis of an implied promise to pay (citing a number of cases).
If we were to adopt the rule for which plaintiff contends the Government could be held liable even though the act under which it was proceeding was repealed or the plan for some other reason abandoned, and nothing was ever done by the Government which in any way affected or injured the plaintiff’s rights in relation to its property.
Our conclusion is that the plaintiff’s petition does not state a cause of action and that it must be dismissed. It is so ordered.
Littleton, Judge; and Whaley, Chief Justice, concur.
Whitakek, Judge, took no part in the decision of this case.