## HEMPSTEAD WAREHOUSE CORP. v. UNITED STATES.

### No. 49118.

United States Court of Claims.
July 9, 1951.

John W. Gaskins, Washington, D. C., for the plaintiff. James T. Clark and King & King, Washington, D. C., were on the brief.

David D. Hochstein, Washington, D. C., with whom was Asst. Atty. Gen. A. Devitt Vanech, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff sues the defendant on three grounds: first, it says the defendant threatened to take its property and thus for a period of time prevented a sale of it; second, that defendant flew its airplanes over its lands at a low level, which prevented it from using its property and which frightened away persons who might have

been interested in purchasing it. The third claim has been abandoned.

■■ Plaintiff admits that the threat to condemn one's property does not constitute a taking, as well it must; but it says that the Act referring plaintiff's claim to this court acknowledged liability therefor and left to the court only the determination of damages. If the Act did so, it acknowledged liability to this plaintiff in a case where defendant would not be liable to any other citizen. The intention so to do is not to be presumed.

The Act reads in pertinent part, Private Law 286, 80th Cong., 2d Session, approved May 11, 1948: "That jurisdiction is hereby conferred upon the Court of Claims to hear, determine, and render judgment upon the claim of Hempstead Warehouse Corporation, a New York corporation, against the United States for loss or damage sustained by it as owner of land adjacent to Mitchel Field, in Nassau County, New York, growing out of the extension and enlargement of Mitchel Field and any plans preparatory thereto and any use of said land in connection with the construction, use, and operation of said airfield as extended and enlarged, including but not limited to the temporary possession and use of the land by the United States under an order for immediate possession made by the United States District Court for the Eastern District of New York on the 30th day of June 1942. * * *"

■ Jurisdiction is conferred on us to hear the "claim" of the plaintiff for damages for what the defendant did. The Act does not say the "claim" is a good claim; it leaves that question to our determination. The Act passed by the House of Representatives appropriated money to pay the claimant for what it said it had been damaged; but the Senate refused to concur and referred the matter to us for determination. The Act as passed did not undertake to define the rights of the parties.

■ Defendant was contemplating the expansion of Mitchel Field, an airport, and the plan of expansion took in plaintiff's property. This plan was widely publicized, and plaintiff says that this prevented it for a long time from selling the property and for this undefined length of time it is entitled to the rental value of the land.

It is obvious that there is more than one weakness in plaintiff's position, but it suffices to say that a threat of condemnation is not a taking, as plaintiff confesses. United States v. Sponenbarger, 308 U.S. 256, 267, 60 S.Ct. 225, 84 L.Ed. 230; Danforth v. United States, 308 U.S. 271, 283–286, 60 S.Ct. 231, 84 L.Ed. 240; Kirch v. United States, 91 Ct.Cl. 196; Poinsett Lumber & Mfg. Co. v. United States, 91 Ct.Cl. 264; Louisiana Delta Cattle Co. v. United States, 93 Ct.Cl. 662; certiorari denied, 314 U.S. 654, 62 S.Ct. 104, 86 L.Ed. 524.

■ For a second cause of action plaintiff says the defendant flew its planes over its lands at so low an altitude as to cause alleged prospective buyers to shy away from purchasing it and to prevent plaintiff from erecting on it any industrial buildings.

This is carrying a bit too far the holding in Causby v. United States, 75 F.Supp. 262, 109 Ct.Cl. 768; United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206. It seems defendant's planes flew over plaintiff's lands at heights of from 70 to 400 feet, but what damage this did is not disclosed. Plaintiff's lands were vacant. So far as the proof shows, defendant did not prevent plaintiff from making any use of its lands it cared to make. Indeed, when plaintiff sold its lands to the General Bronze Corporation and the Atlantic and Pacific Tea Company, they erected upon them the buildings they chose to erect, although the defendant registered its objections thereto with the zoning authorities.

There is no evidence that these flights over plaintiff's property impaired its market value. On the contrary, plaintiff bought the property in 1929 for a price of about $6,500 an acre; in 1939 it offered to sell it to defendnat for $10,000 an acre, but indicated it would take some smaller amount for an immediate sale. On the hearing of the case in April or May of 1950 the parties stipulated its value was $11,000 an acre; it sold it in 1946 for $12,000 an acre. At the time it was sold defendant had not abandoned its plan to take it. If defendant's

flights over the land affected the market value at all, it must have been very little. At any rate, the amount is not shown.

For the period defendant occupied a strip of plaintiff's land for the purpose of removing power lines, plaintiff is entitled to recover the sum of $140.62. (See Findings 13 to 16.) Judgment for this amount will be entered in favor of plaintiff.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges, concur.