Francis SKAW, et al.

v.

The UNITED STATES.

No. 79–79L.

United States Claims Court.

July 6, 1983.

Thomas W. Frizzell, Missoula, Mont., for plaintiff. Tipp, Hoven, Skjelset & Frizzell, Missoula, Mont., of counsel.

Susan J. Rubin, Washington, D.C., with whom was Asst. Atty. Gen., Carol E. Dinkins, Washington, D.C., for defendant.

## OPINION

### On Defendant's Motion for Summary Judgment

HARKINS, Judge.

Plaintiffs held 21 unpatented placer mining claims within the St. Joe National Forest, Idaho, on November 10, 1978. On that date, section 708 of the National Parks and Recreation Act of 1978 (codified at 16 U.S.C. § 1274(a)(23) (Supp. III 1979)), amended the Wild and Scenic Rivers Act, enacted April 2, 1968, (codified at 16 U.S.C. §§ 1271–1287 (1976)) to include the St. Joe River as a component of the national wild and scenic rivers system. Section 708 prohibits dredge or placer mining within the banks or beds of the main stem of the St. Joe and its tributary streams in their entirety above the North Fork of the river, an area that is within national forest boundary and which includes all of plaintiffs' placer mining claims. Plaintiffs claim that enactment of section 708 effected a taking of their property rights under the mining laws and seek $10 million as just compensation.

The questions for decision are: (1) the validity of plaintiffs' unpatented mining claims as of November 10, 1978; (2) whether they conferred a property right for which compensation can be granted; and (3) whether enactment of section 708 constituted a taking of such property.

Plaintiffs have not shown that they had valid placer mining claims, and enactment of section 708 was not a legislative taking of plaintiffs' property interests. Accordingly, defendant is entitled to summary judgment.

The essential facts are not in dispute. Plaintiffs' placer mining claims are Ruby Nos. 1–6 and 10–15 and Joe Nos. 1–6 and 8–10; the principal minerals claimed are garnet and gold. These claims sequentially cover all of the banks and beds of the St. Joe River from Spruce Tree campground to Heller Creek. Some of the claims were filed and recorded in Shoshone County in 1953 and others in 1961 and 1964; they were amended in March and September 1976. They were recorded with the Bureau of Land Management (BLM) on October 19, 1979, and given Serial Nos. I MC 34735 through I MC 34749. The claims are within the St. Joe National Forest, and the area is administered by the Forest Service of the Department of Agriculture as part of the Red Aves Ranger District, St. Joe National Forest, Shoshone County, Idaho. Plaintiffs have never applied for a patent as to any of these claims.

Over the years, some of plaintiffs' placer mining claims have been leased to other companies. The only dredging that has occurred on any of the claims was under a lease dated July 14, 1961, to Continental Rare Minerals, Inc. on the Ruby Nos. 11, 12, 13, 14 and 15. That lease was terminated on April 16, 1967, because the lessee was unable to produce a marketable grade of river-run garnets during the 1966 operating season.

The national wild and scenic rivers system was established by Congress in 1968 to preserve selected rivers with outstandingly remarkable values in a free-flowing condition, with the rivers and their immediate environments protected for the benefit and enjoyment of present and future generations. In 1968, the Wild and Scenic Rivers Act designated eight rivers as components of the system, and listed 27 rivers as potential additions to the system, including in section 5(a)(22): "St. Joe, Idaho: the entire main stem." The Act directed the Secretary of the Interior, or where national forest lands are involved, the Secretary of Agriculture, to study and report, within 10 years of the date of the Act, on the suitability or nonsuitability for inclusion in the national system of designated potential additions. The 1968 Act withdrew all public lands, within the components then designated as included in the national system, from entry, sale or other disposition under the public land laws of the United States; and withdrew all public lands which constitute the bed or bank, or within one-quarter mile

of the bank, of the rivers listed as potential additions from entry, sale or other disposition under the public land laws during specified study periods. The 1968 Act limited the applicability of the mining and mineral leasing laws by exceptions that dealt with mining claims that had not been perfected. These exceptions, which applied to all rivers then or thereafter included in the national wild and scenic rivers system, withdrew the minerals from all forms of appropriation under the mining laws and from operation of the mineral leasing laws. Section 9(a)(iii) provided:

Sec. 9. (a) Nothing in this Act shall affect the applicability of the United States mining and mineral leasing laws within components of the national wild and scenic rivers system except that—

. . . .

(iii) subject to valid existing rights, the minerals in Federal lands which are part of the system and constitute the bed or bank or are situated within one-quarter mile of the bank of any river designated a wild river under this Act *or any subsequent Act* are hereby withdrawn from all forms of appropriation under the *mining laws and from opera*tion of the mineral leasing laws including, in both cases, amendments thereto. [Emphasis added.]

Section 9(b) provided:

(b) The minerals in any Federal lands which constitute the bed or bank or are situated within one-quarter mile of the bank of any river which is listed in section 5, subsection (a) of this Act are hereby withdrawn from all forms of appropriation under the mining laws during the periods specified in section 7, subsection (b) of this Act. Nothing contained in this subsection shall be construed to forbid prospecting or the issuance of leases, licenses, and permits under the mineral leasing laws subject to such conditions as the Secretary of the Interior and, in the case of national forest lands, the Secretary of Agriculture find appropriate to safeguard the area in the event it is subsequently included in the system.

On March 27, 1978, the Secretary of Agriculture submitted to Congress a study report and environmental statement (H.R. Doc. No. 315, 95th Cong., 2d Sess. (1978)) on the St. Joe River. The Secretary noted that the proposal to designate the entire St. Joe River as part of the national system was strongly opposed by local residents, in favor of protection through local initiatives. The Secretary recommended that about 73 miles of the river, that portion within the boundary of the St. Joe National Forest, be designated for inclusion, with the balance to remain protected through state and local initiative. The river management zone encompassed about 21,830 acres, of which 21,771 acres were national forest lands, with the remainder privately owned.

This recommendation is reflected in section 708 of the National Parks and Recreation Act of 1978 enacted on November 10, 1978, to add the St. Joe River as part of the national system. Section 708 provides:

Sec. 708, Section 3(a) of the Wild and Scenic Rivers Act is amended by adding the following new paragraph at the end thereof:

"(23) Saint Joe, Idaho.—The segment above the confluence of the North Fork of the Saint Joe River to Spruce Tree Campground, as a recreational river; the segment above Spruce Tree Campground to Saint Joe Lake, as a wild river, as generally depicted on the map entitled Saint Joe River Corridor Map on file with the Chief of the Forest Service and dated September 1978; to be administered by the Secretary of Agriculture. Notwithstanding any other provision of law, the classification of the Saint Joe River under this paragraph and the subsequent development plan for the river prepared by the Secretary of Agriculture shall at no time interfere with or restrict the maintenance, use, or access to existing or future roads within the adjacent lands nor interfere with or restrict present use of or future construction of bridges across that portion of the Saint Joe designated as a 'recreational river'

under this paragraph. *Dredge or placer mining shall be prohibited within the banks or beds of the main stem of the Saint Joe and its tributary streams in their entirety above the confluence of the main stem with the North Fork of the river.* Nothing in this Act shall be deemed to prohibit the removal of sand and gravel above the high water mark of the Saint Joe River and its tributaries within the river corridor by or under the authority of any public body or its agents for the purposes of construction or maintenance of roads. The Secretary shall take such action as is required under subsection (b) of this section within one year from the date of enactment of this paragraph. For the purposes of this river, there are authorized to be appropriated not more than $1,000,000 for the acquisition of lands or interest in lands." [Emphasis added.]

When section 708 was enacted on November 10, 1978, the State of Idaho had prohibited, by a 1977 amendment to the Idaho Mining Code, dredge and placer mining in any form along the entire St. Joe River, including tributaries, from its origin to its confluence with the Coeur d'Alene Lake, except for the St. Maries River (I.C. § 47–1312). The legislative history of section 708 establishes that the restriction on dredge and placer mining on the St. Joe was to "add Federal protection against dredging where only state law now pertains." Saint Joe River, Idaho: Hearing on S.3052 Before the Subcomm. on Parks and Recreation, Senate Comm. on Energy and Natural Resources, 95th Cong., 2d Sess. (1978); *See also* 124 Cong.Rec. 36201–36202.

Plaintiffs' petition (now complaint), filed in the Court of Claims on March 5, 1979, alleged that an enactment of section 708 with its specific prohibition against dredge and placer mining on the St. Joe constituted a taking on November 10, 1978, of the property rights in their placer mining claims. In order to ascertain the extent and validity of any property rights plaintiffs possessed on November 10, 1978, on defendant's motion, court proceedings were stayed on Au-

gust 22, 1979, to permit the Secretary of the Interior to determine the validity of plaintiffs' mining claims in administrative contest proceedings. The affidavit of the USDA Forest Service Director of Minerals and Geology Staff, Region 1, attached to defendant's motion for a stay, indicated that all of plaintiffs' mining claims were appropriately subject to contest.

On January 15, 1981, BLM on behalf of the Forest Service in accordance with regulations (43 C.F.R. Part 4) filed an administrative complaint to contest (Contest No. I–16952 (943AM)) placer mining claims IMC 34735 through IMC 34749. The complaint listed six reasons the claims were invalid, which reasons included: improper location, and failure of discovery of valuable mineral deposits before or after October 2, 1968. A prehearing conference was held on August 25, 1981, a 2-week hearing was scheduled to begin January 18, 1982, and the parties undertook extensive discovery proceedings. The contest proceedings were terminated, however, without a decision on the validity as of November 10, 1978, of plaintiffs' mining claims.

On November 13, 1981, BLM's Idaho State Office, in the administration of the filing regulations (43 C.F.R. § 3833.2) declared plaintiffs' mining claims were abandoned and void because evidence of Assessment Work/Notice of Intention to hold claim had not been filed on or before December 30, 1980. When the administrative law judge was advised of the November 13, 1981, ruling, he dismissed contest proceedings on November 19, 1981, without prejudice to either party.

Plaintiffs appealed the decision of BLM's Idaho State Office that the claims were abandoned and void for failure to file instruments required by 43 C.F.R. § 3833.1 and § 3833.2. The Interior Board of Land Appeals (IBLA) on April 19, 1982, dismissed the appeal and affirmed the November 13, 1981, decision (IBLA 82–231). In its decision, the IBLA stated that the United States Court of Claims is being advised that

the Department of the Interior "now considers the claims to be abandoned and void."

■ Plaintiffs have not sought review of the IBLA decision, and do not contest in this court the fact that by November 13, 1981, their claims were abandoned and void. The United States Claims Court, has no jurisdiction to review the IBLA decision which declared plaintiffs' mining claims abandoned and void. *United States v. Jones,* 336 U.S. 641, 69 S.Ct. 787, 93 L.Ed. 938 (1948); *Freese v. United States,* 221 Ct.Cl. 963, 963–64 (1979). Authority to review these administrative decisions of the Secretary of the Interior lies in the appropriate federal district court. Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976); *Patterson v. United States,* 115 Ct.Cl. 348, 353–54 (1950).

■ Plaintiffs' complaint asserts the placer mining claims were valid and in compliance with the mining laws of the United States on November 10, 1978. If in fact plaintiffs' claims were valid on that date, they would have property rights subject to protection under the fifth amendment. Once there is a valid discovery and a proper location, a mining claim is real property in the highest sense. Upon location of a valid claim, the area becomes segregated from the public domain. *St. Louis Mining Co. v. Montana Mining Co.,* 171 U.S. 650, 19 S.Ct. 61, 43 L.Ed. 320 (1898); *Freese v. United States,* 639 F.2d 754, 757 (Ct.Cl.1981).

Defendant's motion for summary judgment asserts that plaintiffs' placer mining claims were not valid under the mining laws on November 10, 1978. Defendant denies that the claims were ever properly located, or that valuable minerals have been discovered within the boundary of the respective claims as required by the mining law. *United States v. Coleman,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968); *Chisman v. Miller,* 197 U.S. 313, 25 S.Ct. 468, 49 L.Ed. 770 (1905).

■ In the complaint, plaintiffs assert their placer mining claims were valid and in compliance with the mining laws of the United States on November 10, 1978. The

Federal mining law permits citizens to explore, discover, and extract valuable minerals from the public domain and to obtain title to lands containing such discoveries. Under 30 U.S.C. § 22 (1976), "all valuable mineral deposits in the lands belonging to the United States ... shall be free and open to exploration and purchase...." Rights in an unpatented mining claim are limited to possession, and title remains in the United States. The basic right of the holder of a valid unpatented mining claim is an exclusive right of possession for mining purposes only. *Cameron v. United States,* 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659 (1920); *United States v. Nogueira,* 403 F.2d 816 (9th Cir.1968). Until a patent issues, the United States, as a fee owner, retains paramount rights and interests in the Federal lands under claim and maintains the authority to regulate the uses of those lands. *Best v. Humboldt Mining Co.,* 371 U.S. 334, 336, 83 S.Ct. 379, 382, 9 L.Ed.2d 350 (1963); *United States v. Lindsey,* 595 F.2d 5 (9th Cir.1979). The United States may regulate mining activities in the national forests in order to protect surface resources. *United States v. Grimaud,* 220 U.S. 506, 522, 31 S.Ct. 480, 485, 55 L.Ed. 563 (1911); *United States v. Richardson,* 599 F.2d 290 (9th Cir.1979).

■ Until the discovery of a valuable mineral deposit, a claimant possesses no property right as against the United States. A mining claim confers valid rights as against the United States only when it is determined that there is (1) a discovery of minerals in quantities as would justify a person of ordinary prudence to expend his money and labor with a reasonable assurance of success, (2) a valid location and (3) performance of yearly assessment work. A discovery of valuable minerals is *sine qua non* of an entry to initiate vested rights against the United States. *Union Oil Co. of California v. Smith,* 249 U.S. 337, 39 S.Ct. 308, 63 L.Ed. 635 (1919). Until there has been a determination that there has been a valuable discovery, the locator has only a gratuity from the United States. *Ickes v. Underwood,* 141 F.2d 546, 548 (D.C.Cir.),

*cert. denied* 323 U.S. 713, 65 S.Ct. 39, 89 L.Ed. 574 (1944). A discovery once made can be lost through changed market conditions. *Mulkern v. Hammitt,* 326 F.2d 896, 898 (9th Cir.1964).

▪ Discovery and location are the conditions precedent to the grant of the property right, as distinguished from assessment work or other requirements which are needed to keep the claims alive. *Ickes v. Virginia-Colorado Dev. Corp.,* 295 U.S. 639, 640, 55 S.Ct. 888, 888, 79 L.Ed. 1627 (1935). The act of location is the marking of claim boundaries, the posting of notice and the recording of that notice if required. If there is a location alone, without a discovery of a valuable mineral deposit, a claimant only has initiated the steps necessary to receive the grant from the Government, and, no rights are created. *Ickes v. Underwood,* 141 F.2d 546.

▪ The long recognized test for a valuable mineral deposit is the prudent person test—whether a person of ordinary prudence would be justified in further expenditure to develop the deposit, with a reasonable prospect of success. *See United States v. Coleman,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170; *Chrisman v. Miller,* 197 U.S. 313, 25 S.Ct. 468, 49 L.Ed. 770. The marketability rule requires a showing that the minerals are of such a quality and quantity that they can be "extracted, removed and marketed at a profit." Actual successful or profitable mining is not required. *United States v. Coleman,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170.

▪ In summary, proof of discovery of a valuable mineral deposit requires a showing of:

1. The existence of a mineral within the claim boundaries;

2. The quantity and quality of those minerals;

3. The cost of mining the deposit on the claim; and

4. If the mineral can be sold, the price at which it can be sold.

If a profit can be shown, there is discovery. If not, the claim was never valid under the mining law.

▪ In their response to defendant's assertion that their mining claims are invalid for failure to show discovery, plaintiffs cite: (1) a statement by a Forest Service supervisor on October 9, 1962, (2) a statement submitted by a mining engineer employed in the USDA Forest Service, Minerals Branch, Missoula, Montana, to the Idaho Land Board Commission on February 2, 1968, on proposed placer mining operations on the St. Joe River by the Idaho Mining Company of Texas, in Section 31, T.43N., R.9E, BM (Ruby No. 2, or 3), involving a tract of 50 acres of land, and (3) the April 1978 St. Joe River study and report by the Secretary of Agriculture. These are general statements that apply to the St. Joe River area and not to the particular claims plaintiffs have located. They are not adequate to establish that valuable minerals have been discovered on each, or any, of plaintiffs' placer claims as required by the mining law. The statements are by representatives of the Department of Agriculture Forest Service, who are without responsibility for recognition of discoveries under the mining laws. Such statements do not constitute admissions by the United States that discoveries have been made. The Secretary of the Interior is responsible for recognition and determination of the validity of mining claims. Within the Department, determinations of validity are subject to review as long as legal title to the property remains in the United States. *Ideal Basic Industries, Inc. v. Morton,* 542 F.2d 1364, 1367–68 (9th Cir.1976).

Defendant's motion for summary judgment puts the fact of discovery in issue. Plaintiffs' response does not include affidavits or other explanation as to time and nature of a discovery of valuable minerals on each of the unpatented claims it has located which would satisfy the discovery standards listed above. When a motion for summary judgment is made, the adverse party may not rest upon the mere allegations or denials of its pleadings or upon general statements of belief; the response

must set forth specific facts in detail and with precision. *Pacific Far East Line, Inc. v. United States,* 513 F.2d 1355, 1358–59 (Ct.Cl.1975); *Royal Indemnity Co. v. United States,* 371 F.2d 462, 465 (Ct.Cl.), *cert. denied* 389 U.S. 833, 88 S.Ct. 33, 19 L.Ed.2d 93 (1967). In the absence of such a factual showing, summary judgment is appropriate in this case.

 If all questions about discovery were resolved in plaintiffs' favor, and if it were assumed that the placer mining claims were valid on November 10, 1978, mere enactment of section 708 would not constitute a taking that entitles plaintiffs to compensation. Clearly, section 708 was not intended by Congress to be another instance in which private property is deliberately taken by direct legislative action, as, for example, in the expansion of the Redwood National Park. 16 U.S.C. §§ 79a–79j (1976). When Congress effects a legislative taking, it does so expressly, and the rights to private property are vested in the United States on passage. In enacting section 708, Congress did not follow the procedure it utilizes to effect a legislative taking. Congress made no provision for the vesting of specifically defined property in the United States as of a particular date, nor was provision made for judicial determination and payment of just compensation. Section 708 does not affirmatively direct the Secretary of the Interior to exercise the power of eminent domain. Congress is cognizant of the significance of a legislative taking and its fiscal implications, and it makes clear any such intent in unambiguous language. Neither section 708 nor its legislative history manifest any such intent.

Section 708 places the St. Joe River in the national wild and scenic rivers system. The prohibition of dredge and placer mining within the banks or beds of the main stem of the river, and its tributaries in their entirety above the confluence with the North Fork, is a regulation of a certain type of mining. Other types of mining, even in the banks and beds, may be undertaken under restrictions sufficient to protect adequately all public and private interests.

The inclusion of the restriction on dredge and placer mining was a recognition of the need to protect the public interest in the water quality of the river. The prohibition against dredge and placer mining gives the Forest Service a management directive and an administrative tool.

 Under the mining law, until a patent issues the United States retains paramount rights and has the authority to regulate the uses of Federal lands under claim. The regulatory powers of the Federal government include the right to protect and promote the general public welfare, and lawful regulatory action does not make a compensable taking merely because the result may diminish the value of private property or prevent the most beneficial use of such property. *Hamilton v. Kentucky Distilleries Co.,* 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194 (1919); *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Carruth v. United States,* 627 F.2d 1068 (Ct.Cl.1980); *Deltona Corp. v. United States,* 657 F.2d 1184 (Ct.Cl.1981), *cert. denied* 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982).

 Plaintiffs cannot show governmental action that constitutes an inverse condemnation. *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631. There has been no physical invasion of plaintiffs' property, nor have specific acts of interference with property rights been shown. On November 10, 1978, plaintiffs for more than a year had been prohibited by the State of Idaho from dredge mining on the entire St. Joe River. Plaintiffs had no permit from the State of Idaho that was interfered with or barred by enactment of section 708.

On the basis of the foregoing, defendant's motion for summary judgment is allowed and plaintiffs' petition (now complaint) will be dismissed.