**Harold C. SCHULTZ**

**v.**

**The UNITED STATES.**

**No. 517–82L.**

United States Claims Court.

May 31, 1984.

---

Raul O. Salazar, Minnetonka, Minn., for plaintiff.

David F. Shuey, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant.

## OPINION

SETO, Judge:

In this inverse condemnation action, plaintiff seeks recovery, based on the Fifth Amendment of the United States Constitution, for a taking of his property, and asserts that the passage of the Wild and Scenic Rivers Act, 16 U.S.C. §§ 1271–1287, in 1968, effected a taking of his property. Moreover, plaintiff contends that repeated and continuous acts by various government officials have been so incompatible with plaintiff's recognized rights of ownership that a compensable taking has occurred.

Defendant has moved pursuant to RUSCC 12(c) for judgment on the pleadings, asserting that: (1) to the extent plaintiff's property was taken, if at all, by the passage of the Act plaintiff's claim is time-barred under 28 U.S.C. § 2401; and (2) plaintiff has failed to plead facts sufficient to show that governmental actions have substantially interfered with plaintiff's use and enjoyment of his property, and the complaint therefore fails to state a claim for which relief can be granted.

## FACTS

Plaintiff, Harold C. Schultz, owns a tract of land near the St. Croix River in Cable, Wisconsin. In 1968, Congress enacted the

Wild and Scenic Rivers Act[1] (16 U.S.C. §§ 1271 *et seq.*) ("Act") primarily to protect "certain selected rivers of the Nation which, with their immediate environments, possess outstandingly remarkable scenic ... or other similar values ... for the benefit and enjoyment of present and future generations."[2] Congress empowered both the Secretary of the Interior and the Secretary of Agriculture to acquire certain interests in land located within the scenic rivers system, subject to the area and percentage limitations prescribed by § 1277 of the Act.[3] Their decision to acquire such land by eminent domain was otherwise wholly discretionary.

Administrative features embodied in § 1281 of the Act restricted public use and enjoyment of "components" of the national wild and scenic rivers system so as to "protect and enhance the values" that led to each component's inclusion within the system. Although the designated Secretaries were delegated broad authority to protect these scenic portions of the nation[4], Congress included a specific provision directing that private property owned within any designated component of the system could be used in any manner unless it *"substantially* interfere[d] with the public use and enjoyment" of its Congressionally recognized values.[5]

Both parties agree that the Wild and Scenic Rivers Act became effective on October 2, 1968. It is also undisputed that plaintiff's property, which is situated adjacent to the Namekagon River, became subject to the Act's provisions as an "adjacent land" of a "component" river under section 1274(a)(6) of the Act.

On March 22, 1984, the court, *ex proprio motu,* ordered oral arguments on defendant's motion for judgment on the pleadings in order to crystallize and streamline the material issues in the case. During oral arguments heard on April 4, 1984, plaintiff conceded that the passage of the Act, in and of itself, did not effect a taking of plaintiff's property.[6] Plaintiff's sole remaining contention is that repeated and continuous acts by various government officials, when viewed in conjunction with Act, constitute a taking of an interest in plaintiff's property for which an inverse condemnation action is proper under the fifth amendment.

Factual allegations contained in plaintiff's amended complaint that are relevant to Count II are as follows: (1) on January 11, 1982, plaintiff telephoned the Realty Specialist, United States Department of the Interior, National Park Service, St. Croix National Scenic Riverway Land Acquisition Office, in an attempt to sell his land to the government; (2) on February 23, 1982, the acting Land Acquisition Officer sent written notification to plaintiff stating that acquisition funds were unavailable, and any further negotiations depended on funding for fiscal year 1983; (3) plaintiff and defendant have been unsuccessful in consummating a purchase agreement for Tract 03–210; and (4) that "repeated and continuous administrative actions of park service officials" had effectively taken plaintiff's property.[7]

1. Pub.L. No. 90–542, § 1(b), 82 Stat. 906.

2. 16 U.S.C. § 1271. Congress declared that the Act was intended to protect "selected rivers or sections thereof in their free-flowing condition to protect the water quality of such rivers *and to fulfill other vital national conservation purposes." Id.* (Emphasis added).

3. The Act initially designated a large portion of the St. Croix River and the lands adjacent thereto, along with the portions of seven other rivers, as "components" of the National Wild and Scenic Rivers System. 16 U.S.C. § 1274.

4. Congress provided that where conflicts of administration would occur among the Scenic Riv-

ers Act and other conservation acts, the most prohibitive use restrictions applied. 16 U.S.C. § 1281(b), (c).

5. 16 U.S.C. § 1281(a) (Emphasis added).

6. Transcript of Oral Arguments Heard on Defendant's Motion for Judgment on the Pleadings, Apr. 4, 1984, at 18. Therefore, defendant's motion for judgment on the pleadings will be granted as to Count I.

7. As drafted, plaintiff's Count II contains only allegation (4); he failed to restate relevant *factual* assertions contained in Count I of his amended complaint. In the interests of fairness

During oral arguments on defendant's motion for judgment on the pleadings, plaintiff presented matters outside the pleadings, including various assertions from both his pre-trial submission and answers to defendant's interrogatories. Based on these matters outside the pleadings, plaintiff described a series of allegedly adverse governmental actions that began in or about 1971 and continued through the filing of the instant suit. Those asserted acts included: (1) repeated trespasses and visits by government officials onto plaintiff's property; (2) failure and/or refusal of government officials to purchase plaintiff's property; (3) governmental refusal to delineate the boundaries of plaintiff's property when it existed as two separately numbered parcels; (4) numerous written letters and oral statements from government officials indicating that the property was going to be condemned in fee, or as to a scenic easement, that induced plaintiff to abandon development plans; and (5) that the cumulative effect of all these governmental actions referred to in (1)–(4) rendered the property unmarketable.

 Plaintiff, therefore, maintains that the foregoing acts by various government officials, when viewed in light of the Act, created an interference so incompatible with plaintiff's rights of ownership that payment of just compensation is appropriate. Defendant, adversatively, avers that plaintiff's mere conclusory allegations, contained in his amended complaint as Count II, fail to state a claim because all the governmental acts complained of could not constitute a compensable taking as a matter of law.

## DISCUSSION

The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear

public burdens which, in all fairness and justice, should be borne by the public as a whole.

*E-Systems v. United States*, 2 Cl.Ct. 271, 275 (1983) (citing *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)). An action for inverse condemnation arises under the fifth amendment's requirement for payment of just compensation when acts of the government are not formally labeled eminent domain, but have "the effect of such exercise." *See Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 887 (Fed.Cir.1983); *see also Eyherabide v. United States*, 345 F.2d 565, 170 Ct.Cl. 598 (1965), and cases cited therein. Inverse condemnation, therefore, "is a legal label for effective expropriation of private property, the sovereign acting indirectly without benefit of formal eminent domain proceedings in condemnation; thus, sovereign acts *incompatible with an owner's present enjoyment of his property rights.*" *Wilfong v. United States*, 480 F.2d 1326, 202 Ct.Cl. 616, 619 n. 2 (1973) (Emphasis added).

 When considering defendant's motion for judgment on the pleadings, this court must treat all of plaintiff's well-pleaded factual allegations as true, and all allegations of the government which have been denied as false; conclusions of law are not deemed admitted. *See* J. Moore, *Moore's Federal Practice*, ¶ 12.15 (2d ed. 1982). A motion for judgment on the pleadings can only be granted when it appears "to a certainty that [plaintiff] is entitled to no relief under any state of facts which could be proved in support of his claim." *Branning v. United States*, 215 Ct.Cl. 949, 950 (1977). "If, on a motion for judgment on the pleadings, *matters outside the pleadings* are presented to and not excluded by the court, *the motion shall be treated as one for summary judgment* and disposed of as provided in Rule 56...." RUSCC 12(c) (Emphasis added).

and judicial economy, we have incorporated ¶¶ VI–VIII of Count I into Count II as though

fully set forth therein.

When plaintiff presented statements from his pre-trial submission and answers to defendant's interrogatories during oral argument, plaintiff clearly presented, and the court allowed, matters outside the pleadings to be considered. The motion in the instant case must consequently be treated as a motion for summary judgment under RUSCC 56. *See e.g. Townsend v. Columbia Operations,* 667 F.2d 844 (9th Cir.1982) (construing the analogous Fed.R. Civ.P. 56). When a motion has been "converted" in this manner to RUSCC 56, RUSCC 12(c) dictates that the parties must be afforded a "reasonable opportunity to present all materials made pertinent to such motion by rule 56."[8] Plaintiff has been freely allowed to amend his complaint and both parties have been given liberal enlargements of time. Moreover, both parties had an opportunity to fully brief and respond to the material issues in writing and at oral arguments, and had the opportunity to introduce answers to interrogatories, admissions on file, and other similar materials. Thus, it is clear beyond cavil that the parties have been given "reasonable opportunity to present all materials" pertinent under RUSCC 56. *See State of Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 585 F.2d 454 (10th Cir.1978) (construing analogous Fed.R.Civ.P. 56.).

"[S]ummary judgment cannot be granted unless there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." RUSCC 56(c); *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam); *see* 6 J. Moore, *Moore's Federal Practice,* ¶ 56.20 (2d ed. 1982). Further, any doubts concerning material questions of fact must, for the purposes of a summary judgment motion, "be resolved against defendant as the moving party," *Housing Corp. of America v. United States,* 199 Ct.Cl. 705, 710 (1972), and inferences to be drawn from the underlying facts "must be viewed in the light most

favorable to ... the party opposing the motion." *Coastal Petroleum Co. v. United States,* 220 Ct.Cl. 690, 693 (1979).

Defendant's motion, now treated as one for summary judgment, puts into issue the factual inquiry concerning the governmental acts that allegedly effected a taking of plaintiff's property. Plaintiff's response does not include affidavits, but his pre-trial submission does contain listings of various correspondence and numerous acts occurring over a twelve-year period. Plaintiff contends that these alleged acts and correspondence, when viewed most favorably to him, and in light of the mandates of the Wild and Scenic Rivers Act, state a cause of action for just compensation.

A taking in the instant case depends on cumulative actions carried out by the defendant or its authorized agents, usually a difficult and problematic factual determination. This court must therefore determine whether the sum of plaintiff's allegations, when taken as true, could support such a claim. However, if a taking occurred over 6 years before October 7, 1982 (the date plaintiff instituted suit), the suit is barred by virtue of our 6-year statute of limitations, 28 U.S.C. § 2501. *See Kabua Kabua v. United States,* 546 F.2d 381, 212 Ct.Cl. 160 (1976), *cert. denied,* 434 U.S. 821, 98 S.Ct. 63, 54 L.Ed.2d 77 (1977).

The Claims Court's statute of limitations is jurisdictional, 28 U.S.C. § 2501, *Parker v. United States,* 2 Cl.Ct. 399, 402 (1983) [NETTESHEIM, J.]: *Gerber v. United States,* 2 Cl.Ct. 311, 315 (1983) [YOCK, J.]; *Ellis v. United States,* 1 Cl.Ct. 141, 143 (1983) [MARGOLIS, J.], and cannot be waived by the court. *Parker, supra* at 402; *Todd v. United States,* 292 F.2d 841, 155 Ct.Cl. 87, 93 (1961). The language of 28 U.S.C. § 2501 is plain and unambiguous, and provides that a claim *"must* be filed within 6 years after the claim first accrues...." *Demo v. United*

---

**8.** Over defendant's objection at oral arguments, plaintiff pierced the pleadings, relying almost exclusively on factual allegations and cases cited in his pre-trial submission as support for his claim. Plaintiff was surely cognizant that "matters outside the pleadings" would be considered herein.

*States,* 3 Cl.Ct. 349, 352 (1983) (WHITE, J.) (Emphasis in original). The statute of limitations is also applicable to fifth amendment taking cases, and "[a]s a general rule, a claim accrues when all events necessary to fix liability have occurred." *L.S.S. Leasing Corp. v. United States,* 695 F.2d 1359, 1365 (Fed.Cir.1982). Therefore, 28 U.S.C. § 2501 precludes consideration of any governmental actions which occurred prior to October 7, 1976. Only defendant's subsequent incompatible acts may be considered.

Having carefully examined the pleadings, motions and memoranda, pre-trial submissions, and the transcript of oral arguments in the light most favorable to plaintiff, and assuming the truth of all of plaintiff's allegations, it is found that plaintiff presents six *factual* contentions: (1) government officials made numerous visits to, and covert trespasses on, his property; (2) government officials refused to purchase plaintiff's property; (3) government officials failed to delimit the boundaries of plaintiff's private property when designated as two separate parcels; (4) government officials wrote letters and made oral statements indicating that plaintiff's property was going to be condemned in fee, or as to a scenic easement, and (5) in reliance thereon, plaintiff abandoned commercial expansion plans; and (6) defendant's actions referred to in (1)–(5) cumulatively rendered his property unmarketable. Plaintiff maintains that the net result of these incompatible acts was the taking of an interest in his property.

## I

This court's predecessor, the Court of Claims [9], formulated the test for incompatibility by focusing on "whether the Government action is such that it 'deprives the owner of all or most of his interest in the property.'" *Foster v. United States,* 607 F.2d 943, 221 Ct.Cl. 412, 419, 424 (1979). "[W]hether there is a fifth amendment taking cannot turn simply on general propositions of law; it must be based on the particular circumstances of each case." [10] *Aris Gloves, Inc. v. United States,* 420 F.2d 1386, 190 Ct.Cl. 367, 375 (1970). Moreover, "[n]either physical invasion nor physical restraint constitutes a *sine qua non* of a constitutionally controlled taking", *Yuba Goldfields, Inc. v. United States, supra* at 887. Furthermore, "[t]here are two well-recognized situations where the government will be held to take without any formal expropriation or physical invasion", *Armijo v. United States,* 663 F.2d 90, 229 Ct.Cl. 34, 37 (1981): (1) where actual access to the private property is cut off, *Armijo, supra; Laney v. United States,* 661 F.2d 145, 228 Ct.Cl. 519 (1981); *Foster,* 607 F.2d 943, 221 Ct.Cl. at 419 (1979); *Drakes Bay Land Co. v. United States,* 424 F.2d 574, 191 Ct.Cl. 389 (1970); *Pete v. United States,* 531 F.2d 1018, 209 Ct.Cl. 270 (1976), and (2) "when the government regulation is practically so burdensome and pervasive that the owner is denied all use of his land." *Armijo,* 663 F.2d 90, 229 Ct.Cl. at 37; *see also Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); *Benensen v. United States,* 548 F.2d 939, 212 Ct.Cl. 375 (1977).

At oral argument plaintiff conceded that ingress and egress to his property have

---

**9.** Decisions of the Court of Claims are binding precedents in this court pursuant to United States Claims Court General Order No. 1, adopted October 7, 1982.

**10.** In a recent opinion, this court explained that: [the] [f]actors relevant to whether there has been a taking are the degree to which the property owner's rights were impaired, the extent to which the property owner is an incidental beneficiary of the governmental action, the importance of the public interest to be served, whether the exercise of governmental power can be characterized as novel and unexpected or falling within traditional boundaries, and whether the action substituted any rights or remedies for those it destroyed. In determining whether a taking has occurred the court must weigh all of the relevant factors and decide whether compensation is required by principles of justice and fair play.
*Shanghai Power Co. v. United States,* 4 Cl.Ct. 237, 242–43 (1983) [KOZINSKI, C.J.] (citing numerous cases).

remained unaffected; therefore, "access" is not at issue. The sole remaining issue is whether defendant's allegedly incompatible acts, when taken as a whole, were so burdensome and substantial as to "deprive [plaintiff] of all or most of his interest" in the property. *United States v. General Motors*, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945); *see Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) [Holmes, J.].

## II

Plaintiff cites *Drakes Bay Land Co. v. United States*, 424 F.2d 574, 191 Ct.Cl. 389 (1970), in support of his claim of inverse condemnation in the instant case. *Drakes Bay*, however, offers plaintiff's theory little support. In *Drakes Bay*, the Court of Claims found that a taking occurred where Congress had declared an intent to condemn plaintiff's land (part of the Point Reyes National Seashore) and the Park Service took "positive and effectual steps" to prevent the development of the plaintiff's land without actually condemning it. The Park Service had condemned access to plaintiff's property, thus precluding plaintiff's planned housing subdivision and eliminating any reasonable use of the property by using "its available funds to thwart plaintiff, not to compensate [him]." *Drakes Bay*, 424 F.2d 574, 191 Ct.Cl. at 414. Plaintiff's every effort to use or market its property was vitiated by administrative actions, including: (1) confederation with local agencies to prevent necessary permits for water and zoning variances; (2) refusal to purchase or permit an exchange of plaintiff's land where the statute itself had executed an inchoate interest acquisition to be perfected later; and (3) publicity campaigns specifically designed to destroy any market for its land.

█ In the case at bar, plaintiff's factual allegations do not demonstrate a chronic and unreasonable pattern of behavior by the government that could support a claim for inverse condemnation. Clearly, isolated incidents of governmental trespass, or governmental failure to purchase the property where doing so was wholly discretionary under section 1277 of the Act, cannot constitute a taking of plaintiff's property. Moreover, any governmental failure to delineate the boundaries of plaintiff's private property, something every prospective property buyer or seller hires a private surveyor for, is a frail argument for establishing a taking in the *constitutional* sense. Plaintiff's contention that governmental actions rendered his property unmarketable is unsupported by the *facts* in this case. Plaintiff, in fact, alleged in his pre-trial submission that "[t]he fair market value of Plaintiff's property as of February 1982 was at least $200,000, *said amount being the amount of the last government offer made in 1980.*" It is thus undisputed that plaintiff was apparently able to sell his property, albeit not at a price he deemed appropriate.

## III

█ Plaintiff's final factual allegation concerns letters and oral statements made by government officials, which indicated to plaintiff that his property was going to be condemned and caused him to abandon his development plans. In *Pitman v. United States*, 546 F.2d 431, 211 Ct.Cl. 357, 358 (1976), the Court of Claims found that even where a plaintiff was notified in writing that his property was going to be condemned and would soon be appraised, and he received a written offer to purchase, the property was not yet appropriated for a public use. *A priori*, when the government notified plaintiff that it chose not to actually condemn, there was no taking. "A threat of condemnation is not a taking." *Pitman, id.*, 546 F.2d 431, 211 Ct.Cl. at 358 (citing *Hempstead Warehouse Corp. v. United States*, 98 F.Supp. 572, 120 Ct.Cl. 291 (1951)). Plaintiff's contention that governmental actions which merely indicated an intention to take should be considered a taking is unsupported and against the weight of authority.

In the case at bar, plaintiff has plead no facts, nor urged any inferences therefrom, which support a finding of governmental

interference with the *present* use and enjoyment of his land. Plaintiff's allegation concerning frustration of future and speculative uses does not support a *present* taking claim. *See, e.g., Armijo v. United States*, 663 F.2d 90, 229 Ct.Cl. 34 (1981). In response to this court's inquiry at oral argument as to why plaintiff did not commercially expand, plaintiff's counsel stated that "[h]e [plaintiff] felt it would be a futile investment to put money in at the time, in an attempt to open a restaurant." Plaintiff's investment decision was not proscribed by statute or governmental action, although possible governmental action may have been a factor in this decision.

The Court of Appeals for the Federal Circuit, in *Yuba Goldfields, Inc. v. United States, supra* at 887 (Fed.Cir.1983), held that "[t]he fact-intensive nature of just compensation jurisprudence to date, however, disoriented in other contexts, argues against precipitous grants of summary judgment." That court, nevertheless, held that "[t]here may well be just compensation cases in which the United States as the moving party is 'entitled to judgment as a matter of law ... *where it is quite clear what the truth is....*'" *Id.* (citing *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944) (Emphasis added)). While inconsistent acts of defendant's officers may be enjoinable, they do not *ipso facto* constitute a taking that vested some kind of title in the government and entitled the plaintiff to just compensation. *See e.g., Armijo v. United States*, 663 F.2d 90, 229 Ct.Cl. 34 (1981); *Southern California Financial Corp. v. United States*, 634 F.2d 521, 225 Ct.Cl. 104 (1980), *cert. denied*, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981); *NBH Land Co. v. United States*, 576 F.2d 317, 217 Ct.Cl. 41 (1978).

▮▮▮▮ Finally, in response to questions from the bench during oral arguments, plaintiff's counsel stated that plaintiff continues to reside on the property,

takes in boarders, and operates a small antique shop on the premises. Moreover, plaintiff intended to show that "the frustration of the [property's] highest, and best use ha[s] occurred...." [11] Frustration of an owner's highest and best use of his property is not sufficient, as a matter of fifth amendment jurisprudence, to trigger a right to compensation. *See Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). "The regulatory powers of the Federal government include the right to protect and promote the general public welfare, and lawful regulatory action does not make a compensable taking merely because the result may diminish the value of private property *or prevent the most beneficial use of such property.*" *Skaw v. United States*, 2 Cl.Ct. 795, 802 (1983) (Emphasis added) [HARKINS, J.]. *See Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Hamilton v. Kentucky Distilleries Co.*, 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194 (1919); *Deltona Corp. v. United States*, 657 F.2d 1184, 228 Ct.Cl. 476 (1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *Carruth v. United States*, 627 F.2d 1068, 224 Ct.Cl. 422 (1980). No specific acts of interference with the plaintiff's property rights have been adduced. Plaintiff's allegations are thus insufficient to demonstrate any combination of governmental actions that could constitute grounds for inverse condemnation as a matter of law. *See Skaw*, 2 Cl.Ct. at 802; *Deltona Corp.*, 657 F.2d 1184, 228 Ct.Cl. at 492–93. Finally, plaintiff has not been denied the "economically viable use of his land." *Agins v. City of Tiburon*, 447 F.2d 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). *Accord, Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 295–97, 101 S.Ct. 2352, 2370–71, 69 L.Ed.2d 1 (1981). Moreover, RUSCC 56(e) states in part that:

---

**11.** Transcript of Oral Arguments Heard on Defendant's Motion for Judgment on the Pleadings, Apr. 4, 1984, at 14–15.

When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of his pleading,* but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him. [Emphasis added].

Defendant has moved for summary judgment, and has supported its motion by weight of authority. Plaintiff has not adduced facts that support a claim for inverse condemnation, even when viewed in the light most favorable to him. Plaintiff's mere allegations from within and without the pleadings, are inadequate to rebut defendant's motion (as modified by the court).

### Conclusion

Based on the foregoing discussion, this court concludes that plaintiff has failed to present sufficient "well-pleaded facts" needed to support a claim for inverse condemnation. Therefore, defendant's motion for judgment on the pleadings is GRANTED as to Count I; is converted to a motion for summary judgment as to Count II; and, as such, is also GRANTED. The complaint therefore is to be DISMISSED.

IT IS SO ORDERED.